UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| THOMAS J. STEINES, | ) | |
| | ) | |
| Plaintiff/Counter-Defendant, | ) | 16 C 6370 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| SUSAN MENRISKY, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| DONALD W. MENRISKY, | ) | |
| | ) | |
| Defendant/Counter-Plaintiff/Third-Party Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| SHERYL STEINES, | ) | |
| | ) | |
| Third-Party Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Thomas Steines brought this suit against his former business partner, Donald Menrisky, and Menrisky's wife, Susan Menrisky. Doc. 1. The Menriskys have moved to disqualify attorney Thomas Griffin, and his firm, Walker Wilcox Matousek LLP ("WWM"), from representing Steines in this suit. Doc. 30. The motion is denied.

### Background

No party requested an evidentiary hearing, so the Menriskys' motion may be resolved on the papers. *See Cannon v. U.S. Acoustics Corp.*, 532 F.2d 1118, 1119-20 (7th Cir. 1976).

In 1994, Steines—either alone or together with Donald—founded Simplesoft Solutions, Inc. Doc. 26 at 5 ¶ 8. Steines and the Menriskys were extensively involved with the company's

1

operations and occupied seats on its board. *Id*. at 7 ¶¶ 14-15, 51-52 ¶¶ 14-15. Steines and Donald each own 50% of the company's shares. *Id*. at 3 ¶ 3, 4 ¶ 4.

In 2010, Simplesoft sued Collier Computer Company and obtained a favorable settlement. *Id*. at 9 ¶ 24. WWM and Griffin represented Simplesoft in that suit. *Id*. at 25-26 ¶ 84. After the settlement, Griffin took Steines and Donald to dinner and drinks. *Ibid*.

At some point, the relationship between Steines and the Menriskys soured. One disagreement concerned whether and, if so, on what terms the Menriskys would buy Steines out of his Simplesoft shares. *Id*. at 10 ¶¶ 28-29, 11 ¶ 31, 23 ¶ 75, 58 ¶ 36. Another concerned the Menriskys' access to the company's QuickBooks file. *Id*. at 17-20 ¶¶ 54-63. At some point, Donald terminated Steines's health insurance. *Id*. at 24-25 ¶¶ 80-83. This action prompted Griffin to send Donald this email on June 13, 2016:

> As you may recall, my firm acts as outside legal counsel for Simplesoft. We represented Simplesoft, for example, in connection with the lawsuit Simplesoft filed against Collier Computing Company in the United States District Court for the Northern District of Illinois. You and I met in person when I took you and Tom Steines out for dinner and drinks after we obtained a favorable settlement for Simplesoft in that action.
>
> …
>
> Mr. Steines, in his capacity as president of Simplesoft, has asked me to provide an opinion to Simplesoft regarding your threats to cause Simplesoft to terminate his medical insurance coverage.
>
> …
>
> Mr. Steines also has us looking into some other issues on behalf of Simplesoft, including your and Susan Menrisky's representations and reports that Simplesoft has not been generating any sales or collecting its outstanding receivables. Mr. Steines and Simplesoft have reason to believe those representations by you and Susan Menrisky are false. We are in the process of finalizing a Complaint for Injunctive and Other Relief to enjoin diversions of Simplesoft's sales and receipts, as well as to obtain an accounting and other relief for such misconduct.

*Id*. at 25-26 ¶ 84.

Shortly thereafter, Steines and Simplesoft filed this suit against the Menriskys. Doc. 1. The Menriskys answered, and Donald counterclaimed against Steines and filed a third-party claim against Steines's wife, Sheryl Steines. Doc. 26. The Menriskys then moved to disqualify Griffin and WWM as counsel for Steines and Simplesoft. Doc. 30. This prompted the voluntary dismissal of Simplesoft as a plaintiff, Doc. 36, and Griffin later confirmed on the record that he no longer represented Simplesoft. The Menriskys' motion to disqualify Griffin and WWM as counsel for Steines remains for disposition.

## Discussion

Disqualification is "a drastic measure which courts should hesitate to impose except when absolutely necessary." *Freeman v. Chi. Musical Instrument Co.*, 689 F.2d 715, 721 (7th Cir. 1982); *see also Schwartz v. Cortelloni*, 685 N.E.2d 871, 877 (Ill. 1997) ("Attorney disqualification is a drastic measure because it destroys the attorney-client relationship by prohibiting a party from representation by counsel of his or her choosing."); *Storino, Ramello, and Durkin v. Rackow*, 45 N.E.3d 307, 314 (Ill. App. 2015) (same). The movant bears the burden of showing that disqualification is warranted. *See Gov't of India v. Cook Indus., Inc.*, 569 F.2d 737, 739 (7th Cir. 1978). A district court has broad discretion in deciding whether to disqualify counsel. *See Whiting Corp. v. White Mach. Corp.*, 567 F.2d 713, 715 (7th Cir. 1983).

The Menriskys' motion to disqualify relies principally on Illinois Rule of Professional Conduct 1.9, which reads: "A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent." The Menriskys contend that Rule 1.9 requires disqualification

3

due to asserted attorney-client relationships (1) between Griffin and Donald and (2) between Griffin and Simplesoft. Those two asserted relationships are discussed in turn.

## I. Donald's Relationship with Griffin

Donald's relationship with Griffin does not give rise to a Rule 1.9 violation for two separate reasons. First, Donald and Griffin did not have an attorney-client relationship. Second, even if such a relationship existed, the Collier suit is not substantially related to this suit.

### A. Donald Did Not Have an Attorney-Client Relationship with Griffin.

Because a corporation is a legal entity distinct from its directors and officers, an attorney's representation of a corporation does not imply representation of its directors or officers. *See* Ill. R. Prof. Conduct 1.13, Comment 2 (noting that, although corporate officers or employees may make privileged communications to corporate counsel, "[t]his does not mean … that constituents of an organizational client are the clients of the lawyer."). That said, a corporate director or officer may come to believe that the corporation's attorney also represents him personally. *See Bobbitt v. Victorian House, Inc.*, 545 F. Supp. 1124, 1126 & n.1 (N.D. Ill. 1982); *cf. Bd. of Managers of Eleventh Street Loftominium Ass'n v. Wabash Loftominium, L.L.C.*, 876 N.E.2d 65, 74 (Ill. App. 2007) (noting that, where no actual attorney-client relationship was established, a subsidiary may believe that the parent corporation's attorney also represents the subsidiary). This is particularly true in a closely-held corporation, where "it may be more difficult to draw the line between individual and corporate representation." *Bobbitt*, 545 F. Supp. at 1126. Moreover, "a professional relationship is not dependent on the payment of fees nor … the execution of a formal contract." *Westinghouse Elec. Corp. v. Kerr-McGee Corp.*, 580 F.2d 1311, 1317 (7th Cir. 1978); *see also Rubin and Norris, LLC v. Panzarella*, 51 N.E.3d 879, 891 (Ill. App. 2016). Nonetheless, a putative client's subjective belief that an attorney-client

4

relationship exists is not sufficient to create one; rather, "in the absence of any relatively clear indication by the potential client to the attorney that he believed he was being … represented, … no … attorney-client relationship can be inferred without some finding that the potential client's subjective belief is minimally reasonable." *United States v. Evans*, 113 F.3d 1457, 1465 (7th Cir. 1997) (internal quotation marks omitted).

Donald's declaration, which focuses on the Collier suit, describes his relationship with Griffin. Doc. 50-2. Donald avers that he "participated actively in th[e Collier] litigation, … communicat[ing] directly with Mr. Griffin at times." *Id*. at ¶ 10. Although many of Donald's communications were conveyed through Steines, "in some instances, [Donald] went directly to Mr. Griffin [him]self." *Id*. at ¶ 12. Donald further avers that he "understood and believed Mr. Griffin represented not only Simplesoft's interests but also [Donald's] interests and Mr. Steines' interests personally," and that "[a]ll of [their] interests were aligned and [Donald] drew no distinction between them." *Id*. at ¶ 13.

Even taking his averments as true, Donald has not shown that he and Griffin had an attorney-client relationship. Donald does not aver that he ever indicated to Griffin, clearly or otherwise, any belief that Griffin represented him personally. The fact that Donald was involved in the Collier suit is of little moment, as he was a 50% shareholder in Simplesoft and on its board. Donald's involvement in that suit in no way suggests that he reasonably could have understood Griffin to be representing him personally. Moreover, Donald's averment that he "understood and believed Mr. Griffin" to represent him personally, *ibid.*, is both conclusory and beside the point; as noted, the pertinent question is not whether Donald *subjectively* believed that Griffin represented him personally, but whether that belief was *reasonable*. *See Evans*, 113 F.3d at 1465 (rejecting the contention that "an individual's mere subjective belief that he is

5

represented will always be sufficient to demonstrate that [an attorney-client] relationship existed") (alteration omitted); *see also Keplinger*, 776 F.3d at 701 (same); *Sailsbery v. Village of Sauk Village*, 2016 WL 1402291, \*4 (N.D. Ill. Apr. 11, 2016) ("An attorney-client relationship exists when the lay party submits confidential information to the law party with reasonable belief that the latter is acting as the former's attorney."); *Bobbitt*, 545 F. Supp. at 1126 n.1 ([T]he inquiry is not whether an express agreement was reached between Bobbitt and Stiefel for individual representation. … [T]he question is whether Bobbitt could reasonably have thought Stiefel was acting as his lawyer."). Even viewing the record in the light most favorable to Donald, his belief that Griffin represented him personally was not reasonable.

*Bobbitt* provides a useful point of comparison. In that case—where, incidentally, the court *denied* the motion to disqualify—the corporation's attorney had assisted an officer with personal estate tax considerations for a fee, handled a personal medical insurance claim, and reviewed an apartment lease. *See Bobbitt*, 545 F. Supp. at 1127. Here, by contrast, Donald does not point to a single instance where Griffin provided him with legal advice on any personal matter. Because there is nothing to indicate that Donald reasonably could believe that Griffin represented him personally, Griffin had no attorney-client relationship with Donald under Rule 1.9. *See Sailsbery*, 2016 WL 1402291 at \*5 (denying a motion to disqualify where the only interactions between the party seeking disqualification and the potentially conflicted attorney concerned work that the party's employer had assigned to the party); *Hoban v. Strata Marketing, Inc.*, 1991 WL 204965, \*3 (N.D. Ill. Oct. 2, 1991) (denying a motion to disqualify where the party seeking disqualification presented no evidence that he consulted with the corporate attorney "in any capacity other than as an officer, director, or agent of [the corporation]").

6

### B. The Collier Suit Is Not Substantially Related to This Suit.

Even if Donald and Griffin had an attorney-client relationship, the Collier suit is not substantially related to the present suit for purposes of Rule 1.9. A "substantial relationship" exists where "it could reasonably be said that during the former representation the attorney might have acquired information related to the subject matter of the subsequent representation." *LaSalle Nat. Bank v. Lake Cnty.*, 703 F.2d 252, 255 (7th Cir. 1983). A three-part inquiry governs the analysis:

> First, the trial judge must make a factual reconstruction of the scope of the prior legal representation. Second, it must be determined whether it is reasonable to infer that the confidential information allegedly given would have been given to a lawyer representing a client in those matters. Third, it must be determined whether that information is relevant to the issues raised in the litigation pending against the former client.

*Id*. at 255-56; *see also Schwartz*, 685 N.E.2d at 877-78 (applying this three-part inquiry in evaluating a Rule 1.9 motion). The first step is straightforward; the scope of the prior representation alleged by Donald is the Collier suit.

The second step assumes that the party seeking disqualification has at least alleged that some confidential information was given to the attorney during the prior representation, but here the Menriskys do not specify what confidential information Griffin could have obtained from Donald during the Collier suit. The Menriskys offer "settlement terms" as an example, Doc. 31 at 9, but the record gives no basis to conclude that those terms were confidential in any material respect; presumably, everybody involved in the suit—Donald, Steines, Griffin, Collier, and Collier's lawyer—knew the settlement terms. Moreover, Donald's declaration admits that many of his communications to Griffin about the Collier suit were transmitted through Steines, and that Steines was Simplesoft's principal contact with Griffin throughout that litigation. Doc. 50-2 at ¶ 11-12. Thus, even assuming that Griffin represented Donald personally during the Collier suit,

7

the Menriskys have failed to identify what confidential information of Donald's Griffin possibly could have obtained. In so holding, the court acknowledges that the Menriskys need not show that Donald's confidential information *actually* passed to Griffin and is being presently used. *See Analytica, Inc. v. NPD Research, Inc.*, 708 F.2d 1263, 1266 (7th Cir. 1983). The problem, though, is that the Menriskys have not identified any confidential information of Donald's that Griffin *might* have obtained then.

Even if the Menriskys had identified such confidential information, the third step of the analysis would require them to show that the information is relevant to this suit. This they have not done. The Menriskys contend that "the entire relationship between the parties in this lawsuit was created by the Collier sale." Doc. 31 at 10. That contention is wrong; as the Menriskys admit, the relationship began in 1993, when Donald and Steines together developed the business that became Simplesoft. Doc. 26 at 50 ¶ 8. Perhaps the Menriskys meant that the parties to this suit are fighting over the settlement proceeds that Simplesoft obtained in the Collier suit. That submission, while perhaps correct factually, is irrelevant under the governing analysis. There is nothing confidential (as among Donald, Steines, and Griffin) about the settlement proceeds, so the settlement proceeds themselves cannot provide the link between the Collier suit and the present suit for purposes of Rule 1.9.

For these reasons, the Menriskys have failed to show that Donald's prior dealings with Griffin require Griffin's disqualification from representing Steines in this suit. Given this disposition, which takes Donald's declaration as true, Steines's motion to strike that declaration, Doc. 51, is denied as moot.

## II. Simplesoft's Relationship with Griffin

The Menriskys next argue under Rule 1.9 that the attorney-client relationship between Simplesoft and Griffin requires that Griffin be disqualified from representing Steines, whose interests (according to the Menriskys) conflict with Simplesoft's. (The Menriskys also invoke Rule 1.7, which concerns obligations to current clients, but because Griffin no longer represents Simplesoft, Rule 1.7 does not apply. For the same reason, the failure of Griffin to obtain consent to dual representation under Rule 1.13 is not relevant here, as there presently is no dual representation.) As noted, Rule 1.9 prohibits an attorney from representing a client adverse to a former client in the same or a substantially related matter. There was an attorney-client relationship between Griffin and Simplesoft, but Griffin's prior representation of Simplesoft is not substantially related to his present representation of Steines.

The first step of the inquiry is determining the scope of the prior representation. The Menriskys contend that Simplesoft is a former client of Griffin in both the Collier suit and this suit. Doc. 50 at 4-5. Griffin surely represented Simplesoft in the Collier suit. However, there is no basis in the record to conclude that, during the course of that representation, Griffin could possibly have obtained information from Simplesoft that was confidential as to Steines; to the contrary, Steines was Simplesoft's principal point of contact with Griffin. Moreover, as explained above, the Collier suit is not substantially related to this suit.

That leaves what the Menriskys describe as Griffin's prior representation of Simplesoft in *this* suit. The Menriskys' counterclaims allege that Steines engaged in theft, fraud, and breach of fiduciary duty in his dealings with Simplesoft. Doc. 26 at 64-73 ¶¶ 58-112. As to those matters, Steines's interests are adverse to Simplesoft's because his alleged misconduct involves stealing from Simplesoft, which has an interest in being made whole. So, if Griffin actually represented

Simplesoft in this suit, he likely could not continue as Steines's counsel. Griffin did not, however, actually represent Simplesoft in this suit.

Griffin certainly *purported* to represent Simplesoft here. In his pre-suit email to Donald, Griffin wrote that his "firm acts as outside legal counsel for Simplesoft," that Steines had contacted him "in his capacity as President of Simplesoft," and that Steines had asked him, "on behalf of Simplesoft," to look into the Menriskys' conduct. Doc. 1 at ¶ 84. And the complaint that Griffin filed in this suit named both Steines and Simplesoft as plaintiffs. *Id*. at 1. The fly in the ointment is that Simplesoft did not authorize Griffin to represent it in connection with this suit or the underlying dispute, which means that no attorney-client relationship came into being.

Simplesoft is an Illinois corporation. Doc. 26 at 3 ¶ 2. Under Illinois law, a corporation has the power "to sue and be sued … in its corporate name." 805 ILCS 5/3.10(b). Generally, "[a] corporation can act only through its board of directors and officers." *Bloom v. Nathan Vehon Co.*, 173 N.E. 270, 273 (Ill. 1930); *see also State Bank of Paw Paw v. Boyle*, 87 N.E.2d 656, 659 (Ill. App. 1949). The questions, then, are whether Simplesoft's board authorized the initiation of legal action against the Menriskys and, if not, whether Steines's role as Simplesoft's president empowered him to do so without board approval.

Steines initially claimed that the Simplesoft board had three members: Steines, his wife Sheryl, and Donald. Doc. 1 at ¶ 14. The Menriskys, by contrast, claimed that the board had four members—Steines, Sheryl, and both Menriskys—resulting in an even split. Doc. 26 at 51-52 ¶ 14. At a recent status hearing, Steines (through Griffin) stated that after further review, it was now his position that the board had two members and was evenly split, with one seat held by Donald and the other by Steines. Thus, although they disagree about the board's size, the parties agree that the board is deadlocked. And because Steines indisputably controlled only 50% of

Simplesoft's board at all relevant times, the board was never capable of authorizing Griffin to take any action (filing suit, sending the pre-suit email) on Simplesoft's behalf against the Menriskys. *See* 805 ILCS 5/8.15(c) ("The act of the majority of the directors present at a meeting at which a quorum is present shall be the act of the board of directors, unless the act of a greater number is required by the articles of incorporation or the by-laws.").

The next question is whether Steines, as Simplesoft's president, could nonetheless have authorized Griffin to act on Simplesoft's behalf and created an attorney-client relationship between Griffin and Simplesoft for purposes of this lawsuit and the underlying dispute. The answer is no. Although corporate officers and agents carry implied authority to act on behalf of the corporation, *see* 805 ILCS 5/8.50 ("All officers and agents of the corporation … shall have such express authority and perform such duties in the management … of the corporation as may be provided by the by-laws, or as may be determined by resolution of the board of directors … and such implied authority as recognized by the common law from time to time."), this authority does not encompass "unusual" or "extraordinary" contracts or transactions. *See LaSalle Nat. Bank. v. 53rd-Ellis Currency Exch., Inc.*, 618 N.E.2d 1103, 1115 (Ill. App. 1993) ("[A]pproval of a contract by the board of directors is only necessary when the contract in question is 'unusual or extraordinary.'"); *Clemens v. Sandee Mfg. Co.*, 252 N.E.2d 897, 903 (Ill. App. 1969) ("Ordinarily, the president of a corporation has no authority, in absence of action by the board of directors, to enter into, on behalf of the corporation, unusual or extraordinary commitments, contracts or obligations that are not in the regular course of business."). Where, as here, a corporation's board is deadlocked and the relationship between its members is deteriorating, a decision by half of the board to hire an attorney to press claims against the other half, purportedly on the corporation's behalf, surely is not an ordinary or usual transaction. This is

11

particularly true where success on those claims would result in significant pecuniary gain for the board members pursuing the action. *See Tidy-House Paper Corp. of N.Y. v. Adlman*, 4 A.D.2d 619, 622 (N.Y. App. Div. 1957) ("The presumption that the president may sue without approval of the board of directors has no force when he attempts to sue one who has equal control of the corporation with himself.").

In sum, Griffin's representation of Simplesoft was never authorized by the board, and nor was retaining Griffin on Simplesoft's behalf the type of transaction that Steines, as president, could undertake without board approval. Because corporations act only through their officers and directors, and neither an officer nor the directors properly authorized Griffin's representation of Simplesoft in this matter, it follows that Griffin never actually represented Simplesoft in the run-up to this suit or in the suit itself. Consequently, Simplesoft is Griffin's former client only as to the Collier suit and not as to this suit or the underlying dispute. And given that the Collier suit is not substantially related to this suit, Griffin's representation of Simplesoft in the Collier suit does not warrant disqualifying him from representing Steines in this suit under Rule 1.9.

## Conclusion

For the foregoing reasons, the Menriskys' motion to disqualify Griffin from representing Steines is denied. Because the motion to disqualify WWC is based on imputing Griffin's conflicts to the firm under Rule 1.10, the motion to disqualify WWC is denied as well.

December 2, 2016

_____
United States District Judge